UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

JOSE MARTES,

                Defendant.

------------------------------------X

09 Cr. 1143 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 4/29/14

**Sweet, D.J.**

On March 12, 2010, Jose Martes ("Martes" or the "Defendant") pled guilty without the benefit of a plea agreement to Count 1: Conspiracy to Commit a Hobbs Act Robbery (18 U.S.C. § 1951), a Class C Felony; Count 2: Conspiracy to Distribute and Possess with Intent to Distribute Narcotics (21 U.S.C. § 846), a Class A Felony; and Count 3: Discharge of a Firearm During and in Relation to a Crime of Violence (18 U.S.C. §§ 924(c)(1)(A)(iii)), a Class A Felony.  For the reasons set forth below, Martes will be sentenced to a term of time served to be followed by a period of 3 years' supervised release to run concurrently on Counts 1, 2 and 3.  Defendant is also required to pay a special assessment of $300.

1

**Prior Proceedings**

Defendant was named in a three-count superseding felony Information S2 09 CR 1143-02 (RWS) in the Southern District of New York. Count 1 charges that from September 2004 through June 18, 2005, in the Southern District of New York and elsewhere, Defendant and others conspired to rob individuals believed to be in possession of narcotics and narcotics proceeds in Bronx, NY, in violation of 18 U.S.C. § 1951. Count 2 charges that from June 2003 through October 2009, in the Southern District of New York and elsewhere, Martes and others conspired to distribute and possess with intent to distribute 5 kilograms and more of cocaine; 50 grams and more of crack; and 1 kilogram and more of heroin, in violation of 21 U.S.C. § 841(b)(1)(A). Count 3 charges that from September 2004 through June 18, 2008, in the Southern District of New York, Martes and others used, carried and possessed a firearm, which was discharged during the robbery conspiracy charged in Count 1 in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

On March 12, 2010, the Defendant appeared before the Honorable Barbara S. Jones in the Southern District of New York and pleaded guilty as charged, without the benefit of a plea agreement.

Sentencing is scheduled for May 1, 2014.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

    (A) the applicable category of offense committed

3

           by the applicable category of defendant as set
           forth in the guidelines . . .;

(5)    any pertinent policy statement . . . [issued
       by the Sentencing Commission];

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that document.

Sometime prior to June 18, 2005, Co-Defendant Luis A. Elsevyf ("Elsevyf") learned that multiple kilograms of cocaine were being stored in Apt. 2D at 2300 Olinville Avenue, Bronx, NY (the "Olinville Apartment"), which was the home of his cocaine supplier. After conducting surveillance of the location for several days, on June 18, 2005, Martes, Co-Defendant Gustavo Gomez ("Gomez"), Co-Defendant Danny Rosario ("Rosario"), Co-Defendant Joe Fernandez ("Fernandez"), and Co-Defendant Ramon de la Rosa ("de la Rosa") proceeded to the vicinity of the Olinville Apartment intending to steal approximately 50 kilograms of cocaine and narcotics proceeds. The crew agreed that any drugs that were obtained from the robbery would be divided amongst themselves and that each of the crew members would be responsible for selling his portion of the stolen drugs.

Martes drove to the Olinville Apartment in his girlfriend's car, after which time he and several of the other robbers remained outside of the location. Gomez and Rosario, armed with firearms, entered the building and approached the victim, Luis Mejia ("Mejia"), near the door of his residence. Rosario stated, "This is a hold-up - give us the money," then pushed Mejia into the apartment and struck him several times on the head with a blunt object, causing lacerations to Mejia's head. Rosario then

5

reached into Mejia's pocket and attempted to remove a black bag containing money.  As Rosario and Mejia struggled, Mejia took control of the firearm and shot Rosario in the back; Rosario then fled with the bag of money and the firearm.

NYPD officers responding to a 911 call of "shots fired" found Rosario outside of the building with a gunshot wound to his back.  A black plastic bag containing $19,800 was on the ground next to him.  A witness directed police officers to the Olinville Apartment, where they found Mejia bleeding from a head wound.  Mejia was transported to Jacobi Medical Center in the Bronx, NY; the head wound required multiple staples to close.  Rosario was taken to Jacobi Medical Center, where he underwent surgery.  Surveillance video from inside 2300 Olinville Avenue showed Rosario running from the building carrying a black plastic bag in his right hand, and a black firearm in his left hand.

On June 20, 2005, NYPD detectives interviewed Rosario at Jacobi Medical Center.  He stated that he had loaned Mejia $1,500 and confronted him about the outstanding debt at the Olinville Apartment on June 18, 2005.  Rosario stated that Mejia, who was holding a bag of money, pulled out a gun and threatened to shoot him.  The two began fighting, which continued inside of the apartment.  During the struggle, Rosario heard gunshots, then saw

6

the gun and the bag of money on the floor. Not realizing he had been shot, he grabbed the gun and the money and fled, but once outside the building, he "blacked out."

Based upon the investigation, Rosario was arrested by the NYPD on June 20, 2005; state charges were dismissed in lieu of federal prosecution. Rosario was arrested on December 2, 2009, on a warrant issued in the Southern District of New York that same day. A bench warrant was issued for Elsevyf on December 1, 2009, and executed that same day. Arrest warrants were issued for Martes, Gomez, Fernandez, and de la Rosa on December 2, 2009. Martes and Gomez were arrested that day; Fernandez and de la Rosa are fugitives.

No aggravating or mitigating role adjustments have been identified for the Defendant. According to information provided by the Government, Martes was aware that several of his co-conspirators were armed with firearms at the time of the robbery.

Subsequent to Martes' arrest, the Government learned that for a number of years from June 2003 through his arrest on December 2, 2009, Martes was involved with others in the large-scale, wholesale distribution of cocaine, crack and heroin. Martes, along with his co-conspirators, regularly sold kilogram

7

quantities of drugs to street dealers. It is estimated that Martes was involved in the sale of more than 500 kilograms of crack, more than 300 kilograms of cocaine and approximately 1.5 kilograms of heroin. At the time of his arrest, agents seized well over .5 kilograms of cocaine from Martes' residence, as well as thousands of dollars in cash.

According to the Defendant's plea allocution, Martes stated that between September 2004 and June 18, 2008, he conspired with at least one other individual to commit a robbery in Bronx, NY, from which they were hoping to steal 5 kilograms and more of cocaine. The Defendant admitted that he and his cohorts intended to use force, if necessary, in order to carry out the robbery and that toward that end, a co-conspirator carried a firearm which was discharged during the course of the offense. Martes also stated that between June 2003 and October 2009, in Bronx, NY, he conspired with other individuals to distribute and possess with intent to distribute at least 5 kilograms of cocaine, 50 grams and more or crack and at least 1 kilogram of heroin.

**The Relevant Statutory Provisions**

For Count 1, the maximum term of imprisonment is 20 years, pursuant to 18 U.S.C. § 1951. For Count 2, the maximum

term of imprisonment is life with a ten-year mandatory minimum term of imprisonment, pursuant to 21 U.S.C. § 846. For Count 3, the maximum term of imprisonment is life with a mandatory minimum of ten-years' imprisonment to run consecutively to any other term of imprisonment imposed, pursuant to 18 U.S.C. § 924(c)(1)(A)(iii).

If a term of imprisonment is imposed for Count 1, a term of supervised release of not more than three years may also be imposed, pursuant to 18 U.S.C. § 3583(b)(2). If a term of imprisonment is imposed for Count 2, a term of at least five years' supervised release is required pursuant to 21 U.S.C. § 846. If a term of imprisonment is imposed for Count 3, a term of supervised release of up to five years may also be imposed, pursuant to 18 U.S.C. § 3583(b)(1). If imposed, such terms of supervised release are to run concurrently, pursuant to 18 U.S.C. § 3624(e).

The Defendant is not eligible for probation on Count 1 because he is being sentenced at the same time to a term of imprisonment on a different count or case, pursuant to 18 U.S.C. § 3561(a)(3). The Defendant is not eligible for probation on Counts 2 and 3 because the instant offenses are barred by statute, pursuant to 18 U.S.C. § 3561(a)(2); 18 U.S.C. § 924(c)(1)(A)(iii); and 21 U.S.C. § 846.

The maximum fine for Counts 1 and 3 is $250,000 per count, pursuant to 18 U.S.C. § 3571. The maximum fine for Count 2 is $4 million, pursuant to 21 U.S.C. § 846. A special assessment of $300 is mandatory, pursuant to 18 U.S.C. § 3013. As a result of committing the Counts 1 through 3, the Defendant shall forfeit to the U.S., pursuant to 18 U.S.C. § 1963(a)(1), (a)(2) and (a)(3), all property real and personal, involved in the offense or traceable to such property.

Pursuant to 21 U.S.C. § 862(a)(1)(B) upon a third or subsequent conviction for distribution of a controlled substance, the Defendant may be permanently declared ineligible for any or all Federal benefits as determined by the Court.

As part of his guilty plea, the Defendant admits to the forfeiture allegations with respect to Counts 1 and 2 of the Information. As a result of committing Counts 1 through 3, the Defendant shall forfeit to the U.S., pursuant to 18 U.S.C. § 1963(a)(1), (a)(2) and (a)(3), all property real and personal, involved in the offense or traceable to such property. Pursuant to Rule 32.2, "[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the Defendant knows of the forfeiture at sentencing. The Court must also include

the forfeiture order, directly or by reference, in the judgment."

**The Guidelines**

The November 1, 2013 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Counts 1 and 2 cannot be grouped pursuant to § 3D1.2(a)-(d), as they comprise separate harms and victims. Count 3 carries a mandatory 10-year penalty to run consecutively to any other sentence imposed by the Court. Pursuant to § 2K2.4, the penalty for that offense is that prescribed by statute and is not factored into the following sentencing guideline analysis.

For Count 1, violations of 18 U.S.C. § 1951 are covered by §§ 2B3.1, 2B3.2, 2B3.3 and 2C1.1; however, § 2B3.1 is more analogous to the criminal conduct. The base offense level is 20, pursuant to § 2B3.1(a).

Because the Defendant has also been convicted under 18

11

U.S.C. § 924(c), Use of a Firearm in Relation to a Crime of Violence, an enhancement under § 2B3.1(b)(2) is not applicable, pursuant to § 2K2.4, application note #4.

A two-level increase in the offense level is warranted because the victim suffered bodily injury during the course of the robbery, pursuant to § 2B3.1(b)(3)(A). A one-level increase in the offense level is warranted because the taking of a controlled substance was an object of the offense, pursuant to § 2B3.1(b)(6). A one-level increase in the offense level is warranted because the intended loss of the robbery is $19,000, pursuant to § 2B3.1(b)(7)(B).

The adjusted offense level subtotal for Count 1 is 24.

For Count 2, the guideline for a violation of 21 U.S.C. § 846 is found in § 2D1.1. According to the offense conduct section, the Defendant's criminal activity involved a conspiracy to distribute and possess with intent to distribute more than 500 kilograms of crack, more than 300 kilograms of cocaine and approximately 1.5 kilograms of heroin, which equates to a total of approximately of 1,847,000 kilograms of marijuana. The offense level specified in the Drug Quantity Table under § 2D1.1(c)(1), sets a base offense level of 38.

12

The adjusted offense level subtotal for Count 2 is 38.

According to the PSR, the combined adjusted offense level of 38. Based on the Defendant's plea allocution, Defendant has shown recognition of responsibility for the offense. Because of the Defendant's timely notification of his intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the aforementioned base offense level is 16 or greater, pursuant to §§ 3E1.1(a) and (b), the offenses are reduced three levels.

The total offense level is 35.

As outlined below, the Defendant has two adult criminal convictions.

On December 10, 1998, the Defendant was sentenced for Attempted Criminal Sale of a Controlled Substance in the Third Degree in the Bronx County Supreme Court in Bronx, NY. Defendant was sentenced to 5 years' probation. Pursuant to §§ 4A1.2(e)(2) and 4A1.1(c), this conviction warrants one criminal history point.

On June 1, 1999, the Defendant was sentenced for Criminal

Sale of a Controlled Substance in the Second Degree in New York County, Supreme Court, in New York, NY. Defendant was sentenced to six years' to life imprisonment and six months' suspended license. Defendant was discharged from parole on December 14, 2006. Pursuant to §§ 4A1.2(e)(1) and 4A1.1(a), this conviction warrants three criminal history points.

The criminal convictions above result in a subtotal criminal history score of four. At the time the instant offense was committed, the Defendant was on parole. Pursuant to § 4A1.1(d), two points are added.

The total criminal history points is six. According to the sentencing table at Chapter 5, Part A, six criminal history points establish a Criminal History Category of III. However, the Defendant's Criminal History Category is enhanced to VI because he is considered to be a Career Offender, since he has two prior felony convictions involving controlled substance offenses, pursuant to § 4B1.1.

Based on a total offense level of 35 and a Criminal History Category of VI, the guideline range for imprisonment is 292 to 365 months. However, pursuant to §§ 4B1.1(c)(2)(A) and 5G1.2(e), the guideline range is 412 months to 485 months'

14

imprisonment. The mandatory and consecutive 120-month term of imprisonment, pursuant to 18 U.S.C. § 924(c), has been factored into the resulting guideline range.

The guideline range for a term of supervised release for Count 1 is one to three years, pursuant to § 5D1.2(a)(2); three to five years for Count 3, pursuant to § 5D1.2(a)(1); and five years for Count 2, the minimum required by statute, pursuant to § 5D1.2(c). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).

The Defendant is not eligible for probation on Counts 2 and 3, because the instant offenses are ones for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2). The Defendant is not eligible for probation on Count 1 because he is being sentenced at the same time to a term of imprisonment on a different count or case, pursuant to § 5B1.1(b)(3).

The fine range for the instant offense is from $20,000 to $4,000,000, pursuant to § 5E1.2(c)(4). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall

consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,412.33 to be used for imprisonment, a monthly cost of $278.95 for supervision, and a monthly cost of $2,244.17 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is not warranted in the instant case.

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and

characteristics of the defendant." Pursuant to 18 U.S.C. § 3553(2)(A), the Court weighs the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.

Martes has substantially cooperated with the Government, including providing information about several unsolved drug-related homicides which occurred in Bronx, NY, during the 1990s, providing lengthy testimony at two separate trials, disclosing about other crimes committed by himself, other cooperating witnesses and a number of charged defendants, and providing substantial information about his Co-Defendants. The Defendant has provided this cooperation while potentially subjecting himself and his family to some level of risk and danger. Taken into account all of the above, a downward departure from the Guidelines sentence is warranted.

**The Sentence**

For the instant offense, Martes will be sentenced to time served to be followed by 3 years' supervised release to run concurrently on each Count.

As mandatory conditions of his supervised release,

Defendant shall:

       1) Not commit another federal, state or local crime;

       (2) Not illegally possess a controlled substance;

       (3) Not possess a firearm or destructive device;

       (4) Cooperate in the collection of DNA as directed by the probation officer.

The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

The Defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether the Defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. The

Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

The Defendant shall submit his person, residence, place of business, vehicle or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in reasonable manner.  Failure to submit to a search may be grounds for revocation.  The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The Defendant is to report to the nearest Probation Office within 72 hours of release from custody.  The Defendant is to be supervised by the district of residence.

It is further ordered that the Defendant shall pay to the United States a total special assessment of $300, which shall be due immediately.

The Defendant does not have the ability to pay a fine,

19

and so the fine will be waived.

The Defendant shall forfeit his interest in the following property to the United States: All property real and personal, involved in the offense or traceable to such property.

The Defendant has been detained without bail since his arrest on December 2, 2009. He is not a candidate for voluntary surrender because of the provisions found in 18 U.S.C. § 3143(a)(2).

The terms of this sentence are subject to modification at the sentencing hearing scheduled for May 1, 2014.

It is so ordered.

New York, NY
April 29, 2014

_____
ROBERT W. SWEET